IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LOIS J. CHRISTIAN                                                                                                    PLAINTIFF


             v.                                    CIVIL NO.        10-3068


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her application for disability insurance benefits (DIB) on October 22, 2007, alleging an inability to work since December 17, 2006, due to post traumatic stress disorder (Tr. 103-110, 125). The state disability determination service denied Plaintiff's application initially and on reconsideration (Tr. 47-48, 61-67). Pursuant to Plaintiff's request, a hearing de novo before an Administrative Law Judge (ALJ) was held on March 23, 2009, at which Plaintiff, represented by counsel, and a vocational expert (VE) appeared and testified (Tr. 23-46, 68-69). After considering all of the evidence of record, the ALJ rendered a decision on

July 9, 2009, finding that Plaintiff was not disabled within the meaning of the Social Security Act (the Act) at anytime during the relevant time period (Tr. 49-60). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 8, 2010 (Tr. 1-4).

Plaintiff was fifty-two years old as of her alleged onset date of disability (Tr. 26; 58, Finding No. 7). Plaintiff has a general equivalency degree (GED) and past relevant work experience as an aide in a nursing home, department head at a family clothing store, home health aide, laborer, and winder-electronics (Tr. 26; 42-43; 58, Finding No. 6).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

      The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.**    **Applicable Facts**

      On December 17, 2006 the Plaintiff was attacked by a young man at her place of employment when she was grabbed around the throat and neck and choked and scratched. The Plaintiff presented to the North Arkansas Regional Medical Center on the day of the attack but

all x-rays and CT scans were normal. (T. 185-191).

On December 18, 2006 the Plaintiff saw her family physician, Dr. Cory Jackson, who diagnosed her with a cervical strain and contusions. Dr. Jackson saw the Plaintiff again on December 19, 2006 because she could not go back to work due to anxiety. Dr. Jackson noted that the Plaintiff was very tearful, diagnosed her with anxiety and referred her to a counselor. (T. 262).[1] Dr. Jackson saw the Plaintiff again on December 21, 2006 and then on December 28, 2006 with the same complaints. He changed her prescription to Klonopin[2] 1mg ½ to 1 tablet three times per day. On January 19, 2007 Dr. Jackson started the Plaintiff on Lisinopril 10.[3] The Plaintiff saw Dr. Jackson again on February 6, 2007, March 6, 2007, and on March 13, 2007. On March 13, 2007 he diagnosed the Plaintiff with Posttraumatic stress disorder and Anxiety. (T. 266). Plaintiff was seen by Dr. Jackson through November 6, 2007. On January 14, 2009 Dr. Jackson provided a Medical Assessment of Ability to do Work-Related Activities (Mental). Dr. Jackson felt that the Plaintiff would have a poor/no ability to deal with the public (T. 286), work stresses, maintain concentration or understand, remember and carry out complex job instructions. (T. 287). He also felt she would not be able to relate predictably in social situations. (T. 288).

On December 22, 2006 the Plaintiff began to treat with Visa Health (T. 258-259. She met with Vickie Henley, LCSW a therapist on December 27, 2006 (T. 252) and she continued to see

---

[1]The court notes that Dr. Jackson had just diagnosed the Plaintiff with Depression w/Anxiety on November 6, 2006 and prescribed Cipro.

[2]Klonopin (clonazepam) is in a group of drugs called benzodiazepines (ben-zoe-dye-AZE-eh-peens). Clonazepam affects chemicals in the brain that may become unbalanced and cause anxiety. See www.drugs.com (Viewed July 5, 2010).

[3]Lisinopril is used to treat hypertension, congestive heart failure and to improve survival after a heart attack. See www.drugs.com (Viewed July 5, 2010).

Ms. Henley until January 3, 2008. (T. 219).

On February 8, 2007 the Plaintiff met with Dr. Leigh Anne Bennett, M.D. with The BridgeWay program who noted that the Plaintiff was on Klonopin and Paxil but had not responded well (T. 198). On February 9, 2007 the Plaintiff also saw Dr. Duong Nguyen, M.D. who diagnosed her with Major Depression and PTSD.  His GAF evaluation was 35. [4]The Plaintiff then began a series of ECT treatments.  The Plaintiff was discharged from The BridgeWay treatment facility on February 28, 2007. (T. 192-195).  The Discharge Summary by Dr. Bennett notes that the Plaintiff was "given six ECT [5]treatments with good clinical response". It was also noted that she responded well to Paxil for depression and Klonopin for anxiety. The Plaintiff was instructed to follow up with Ozark Counseling. (T. 192).

On March 19, 2007 the Plaintiff meet with clinical psychologist Winston T. Wilson, Ph. D. who administered the Hooper Visual Organization Test, Bender-Gestalt, Trials A and B, the Weschser Memory Scale, the Minnesota Multiphasic  Personality Inventory and the Symptom Check-List 90-Revised.  Dr. Wilson felt that the Plaintiff did exhibit poor memory, but on the MMPI-2 he felt that she exaggerated problems. (T. 283).  Dr. Wilson felt that the Plaintiff's memory for material about the attack was inadequate and she was in no acute distress. (T. 284). Dr. Wilson diagnosed the Plaintiff with Dysthymic Disorder (300.4) but felt that this was not

---

[4]A GAF of 31 through 40 represents "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood...." DSM-IV-TR at 34.

[5]Electroconvulsive therapy (ECT) is a procedure in which electric currents are passed through the brain, deliberately triggering a brief seizure. Electroconvulsive therapy seems to cause changes in brain chemistry that can immediately reverse symptoms of certain mental illnesses.  See www.mayoclinic.com  (Viewed July 7, 2010). \

directly related to her work injury (T. 284) and that she had been depressed and anxious for many years. (T. 285).  Dr. Wilson felt that return to work was the best treatment for her. (Id.).

On December 12, 2007 a Psychiatric Review Technique was performed by Kay Cogbill who found that the Plaintiff did have a Anxiety-Related Disorder and PTSD (T. 204) but felt that she had mild restrictions of activities of daily living, moderate restrictions of social function and maintaining concentration, persistence, or pace and No Episodes of Decompensation (T. 209). Ms. Cogbill did note that the medical records supported a diagnosis of PTSD but that the records showed she was improving. (T. 211).  Ms. Cogbill also performed a Mental Residual Functional Capacity Assessment and found the Plaintiff was Moderately Limited or Not Significantly Limited in her Functional Capacity Assessment. (T. 217) She felt that the Plaintiff was "**able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variable, little judgment; supervision required is simple, direct and concrete. (Unskilled)**". (Id.)

On August 5, 2008 the Plaintiff presented to St. John's Clinic with chest pain but there was no medical evidence to indicate the chest pain was cardiac related. (T. 289).

On January 14, 2009 Dr. Cory Jackson prepared a Medical Assessment of Ability to do Work-Related Activities (Mental) (T. 286-288).  Dr. Jackson found that the Plaintiff had no useful ability to function in her ability to deal with the public (T. 286), work stress, attention/concentration, carry out complex job instructions (T. 287), or relate predictably in social situation. (Tr. 288).

IV.    **Discussion**:

The ALJ found that Ms. Christian had severe impairments, including anxiety and

depression but did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (hereinafter "Adult Listings") (Tr. 54). Specifically, the ALJ found that Ms. Christian's mental impairments do not meet or medically equal Adult Listings 12.04 Affective Disorders or 12.06 Anxiety Disorders. Id. Specifically, the ALJ found that Ms. Christian's mental impairments do not satisfy "Paragraph B" criteria (Tr. 54).

    A.  **Listing Requirements for Mental Impairment:**

The "Paragraph B" criteria for both Affective Disorder (12.04) and Anxiety Disorder (12.06) are the same and are as follows:

    B. Resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or

        2. Marked difficulties in maintaining social functioning; or

        3. Marked difficulties in maintaining concentration, persistence, or pace; or

        4. Repeated episodes of decompensation, each of extended duration.

The ALJ felt that the Plaintiff did not have marked restrictions in two of the criteria. The regulations pertaining to meeting or medically equaling a listed impairment define "marked" as "more than moderate but less than extreme." Id. Pt. 404, Subpt. P., App.1 § 112.00(C). *Stormo v. Barnhart*, 377 F.3d 801, 808 (C.A.8 (S.D.),2004).

    1.  Activities of Daily Living:

The Plaintiff indicated in her Function Report dated November 10, 2007 that she had no difficulty with any aspect of her personal care (T. 136), that she helps her mother prepare the meals, she does house cleaning and laundry (T. 137), she goes outside everyday to smoke, can

drive a car and go shopping, and can handle money. (T. 138). On July 16, 2007 she indicated to her therapist that she had gone to garage sales. (T. 233). On August 27, 2007 the Plaintiff indicated to her therapist that she had been caring for her son who had gout. (T. 232). These activities support the ALJ conclusion that her activities of daily living were only moderately impaired.  See *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  She acknowledged that she does go shopping but not alone. See *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church).

   2.  Social Functioning

The ALJ found the Plaintiff to have marked limitations in her social functioning.

Social functioning includes the ability to get along with others (e.g., family members, neighborhood friends, classmates, teachers)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(2)(b). The Plaintiff indicated in her Function Report dated November 10, 2007 that she  talks with her family often on the phone and attends church on Wednesday and Sunday.  She testified however that the church is only 10-15 members and she knows everyone.  The ALJ acknowledged the Plaintiff's testimony and based upon the medical evidence the Plaintiff suffered from PTSD he concluded that she cannot be around large crowds, she avoids crowds and goes out only to familiar places and surroundings.

3.  Difficulties in Maintaining Concentration, Persistence or Pace

The ALJ found that the Plaintiff would have Moderate difficulty in maintaining concentration, persistence or pace. On December 27, 2006 during her initial evaluation at Vista Health Outpatient Services it was noted that the Plaintiff's thought process was logical and responsive, her thought content was appropriate, her attention/concentration was intact, memory was intact, and her insight and judgment were normal. (T. 244). This evaluation is expressed throughout her therapy and there is never a notation of a lack of concentration, persistence or pace.

4.  Decompensation

The ALJ found that there were no episodes of decompensation of any extended duration. The Plaintiff does not dispute this finding.

The Plaintiff contends that the ALJ failed to consider all of her impairments at step two because the ALJ did not consider her impairments in combination. The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s mental impairments. Id. at 484, citing *Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979). In the present case Depression and Anxiety both contain the same criteria which was noted and addressed by the ALJ.

Substantial evidence supports the ALJ's conclusion that the Plaintiff did not meet the listing requirements for disability from anxiety and/or depression.

B.  RFC:

The ALJ concluded that Ms. Christian maintains the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitation: claimant is limited to incidental interaction with co-workers and others consistent with the work performed" (Tr. 56).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The only RFC assessment of record was prepared by Kay Cogbill  (T. 215-218) , a non-examining, consultative physician who never examined plaintiff.  Ms. Cogbill was of the opinion that the Plaintiff could perform "work where interpersonal contact is incidental to work performed." (T. 217).  This opinion and language was adopted by the ALJ in her RFC assessment.

The Plaintiff was treated by her family physician following her attack who referred her to

counseling after diagnosing the Plaintiff with Anxiety (PTSD) and Depression. She began counseling and continued counseling for 13 months with limited success. She sought ECT treatment and spent 28 days in the hospital receiving treatment. Given the extensive mental health treatment provided to the Plaintiff, the Court does not find Ms. Cogbill's opinion to constitute substantial evidence of plaintiff's RFC. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). The Court has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative opinion is the only examining doctor to contradict the treating physician. Id. *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003)  Remand is necessary to allow the ALJ to develop the record further regarding plaintiff's RFC. *See* 20 C.F.R. §404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

The Plaintiff's treating physician provided a Medical Assessment of Ability to do work-related activities (mental) which opined that the Plaintiff was severely limited in her ability to deal with the public, handle work stresses, maintain concentration and follow complex job instruction. (T. 286-287).  The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The ALJ discounted the opinion of the Plaintiff's treating physician. Such opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). The court will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted). The ALJ discredited Dr. Jackson's medical assessment of Ms. Christian's ability to do work-related activities because it was "based on relatively infrequent visits" (Tr. 57). However, Ms. Christian visited Dr. Jackson approximately twenty-one times in less than a two year period; similarly, she saw Ms. Henley approximately twenty times in less than one and a half years (Tr. 219, 260-69, 278-81). Dr. Jackson's opinions are consistent with those of Ms. Henley, with all of the medical records and with the nature and onset of Ms. Christian's mental illnesses. The court cannot say that the other medical assessments are supported by better or more thorough medical evidence.

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001). Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." Id.; Obermeier, 2008

WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). Further development is appropriate when divergent opinions exist between a treating physician and a non treating one time non- consultive evaluation. Should the medical record require additional development, it is the ALJ's duty to develop the record by directing interrogatories to the treating  physicians or by ordering consultative examinations.  *See Bishop v. Sullivan,*  900 F.2d 1259, 1263 (C.A.8 (Mo.),1990).

**V.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this July 7, 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE